1  DAVID B. GOLUBCHIK (SBN 185520)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: dbg@lnbyb.com; kjm@lnbyb.com
5
6  Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11 In re:                            ) Case No. 15-30897
                                     )
12 UNITED PROSPERITY GROUP, INC. dba ) Chapter 11 Case
   THE PRODUCE COMPANY,              )
13                                   )
                                     ) **DEBTOR'S EMERGENCY MOTION**
14      Debtor and Debtor in Possession. ) **FOR ORDER (1) GRANTING INTERIM**
                                     ) **USE OF CASH COLLATERAL; (2)**
15                                   ) **SCHEDULING DEADLINES RELATING**
                                     ) **TO A FINAL HEARING ON**
16                                   ) **PERMANENT USE OF CASH**
                                     ) **COLLATERAL AND FINAL APPROVAL**
17                                   ) **OF CASH COLLATERAL**
                                     ) **STIPULATIONS; AND (3) AFTER**
18                                   ) **CONCLUSION OF A FINAL HEARING**
                                     ) **AUTHORIZING PERMANENT USE OF**
19                                   ) **CASH COLLATERAL; MEMORANDUM**
                                     ) **OF POINTS AND AUTHORITIES IN**
20                                   ) **SUPPORT THEREOF**
21                                   )
                                     ) Date:  July 20, 2015 [Requested]
22                                   ) Time:  9:00 a.m. [Requested]
                                     ) Place: U.S Bankruptcy Court
23                                   )        235 Pine St., 23rd Floor
                                     )        Sa Francisco, CA 94101
24                                   ) Judge: The Hon. Hannah L. Blumenstiel
                                     )
25                                   )
                                     )
26 _____  )

27

28

TO THE HONORABLE HANNAH L. BLUMENSTIEL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS, THE DEBTOR'S SECURED CREDITORS AND OTHER PARTIES IN INTEREST:

United Prosperity Group, Inc. dba The Produce Company, debtor and debtor in possession in the above-referenced chapter 11 case ("Debtor"), hereby moves, pursuant to 11 U.S.C. § 363, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, all applicable Local Bankruptcy Rules, the Court's "Guidelines for Cash Collateral & Financing Motions & Stipulations" (the "Guidelines"), and all other applicable rules and regulations (the "Motion"), for entry of an order, in substantially the same form and substance as the proposed form of order attached hereto as Exhibit 1 (the "Order"): (1) granting interim use of cash collateral; (2) scheduling deadlines relating to a final hearing on permanent use of cash collateral and final approval of the cash collateral stipulations; and (3) after conclusion of a final hearing authorizing permanent use of cash collateral.  This Motion is supported by the *Declaration of Soo Ming Yee in Support of First-Day Motions* (the "Yee Declaration") which the Debtor is filing concurrently with this Motion.

**A.      Background Information.**

As discussed further below and in the Yee Declaration, Debtor is a processor that specializes in providing fresh cut produce (fruits & vegetables) to manufacturers (to use as ingredients for other products) and distributors (for further distribution to entities such as restaurants, hotels, hospitals and airline carriers).  Debtor's innovative techniques for washing, cleaning and processing cut products result in efficient and cost-effective solutions as compared to whole raw produce that requires washing, cleaning and processing.  Debtor adds value to chefs and manufactures alike due to its purchasing power, the ready to use factor of cut produce, and reduced cost of labor related to processing produce.

JR Produce was an entity that engaged in a similar business as that of Debtor, on a much smaller scale and without the progressive techniques and capabilities employed by the Company.  Based on lack of sufficient financial wherewithal, JR Produce ceased operations in

mid-2008. In late 2008, Debtor approached JR Produce to purchase its operating equipment to start new operations. An agreement was reached pursuant to which Debtor purchased JR Produce's operating equipment and took over its lease of business premises.

Since the end of 2008, Debtor has worked tirelessly to, first create, and thereafter, grow its business. From a startup in the end of 2008, Debtor has grown to the current level of 160-175 employees and revenues of $18-$20 million annually. Debtor has become a large part of the community, providing cut produce to numerous industries with distribution channels from San Francisco to Modesto, and from Monterey to Sacramento. Debtor has always remained current with its financial obligations to vendors and has provided the highest level of product and customer service to its customers.

When JR Produce ceased operations, a class action wage and hour lawsuit was instituted against it, which resulted in a judgment of over $1.9 million. Several years after Debtor commenced its operations, the plaintiffs that acquired a judgment against JR Produce commenced the identical action against Debtor based on a theory of successor liability, in the Superior Court of California for the County of San Francisco (the "State Court"), Case No. CIV464121. Unfortunately for Debtor, the State Court issued a verdict in favor of the plaintiffs, thereby saddling Debtor with an unmanageable judgment of over $1.9 million retroactive to the original judgment, resulting in fees, costs and interest of hundreds of thousands of additional dollars. The judgment at issue is presently in excess of $2.5 million (the "Judgment").

Debtor sought to negotiate a resolution with the plaintiffs to avoid disruption to its operations. The plaintiffs, however, did not engage in settlement discussions and, instead, commenced levy actions against Debtor.

The plaintiffs' execution on and efforts to enforce the Judgment directly and immediately threatens Debtor's ability to continue operating as a going concern. On June 22, 2015, plaintiffs levied on UPG's bank accounts at Umpqua Bank and Wells Fargo Bank based on the Judgment entered in the State Court on May 27, 2015. The plaintiffs' levies netted approximately $268,000, almost all of which was already obligated to Debtor's employees,

producers and vendors. As a result of the levy, Debtor was unable to pay the salaries of at least 100 employees, and the payments to these employees bounced because the account funds were depleted. Approximately 20 payments to vendors totaling more than $100,000 similarly bounced. Other vendors with outstanding checks were contacted and asked to hold checks for deposit. The fees on the approximately 160 bounced checks itself totals over $5,500. The levied funds are currently in the possession of the San Francisco Sheriff's Department. Debtor has concurrently filed a motion seeking turnover of such funds to Debtor.

Debtor was forced to commence this bankruptcy case to stay such enforcement efforts to avoid irreparable harm to the Company, its vendors, its lenders and its customer base. Through the instant case, Debtor intends to restructure its financial affairs to emerge as a stronger and healthier company free of litigation to continue to be an important part of its community.

**B.** **Primary Assets And Liabilities.**

As set forth in the budget attached as Exhibit 1 to the Yee Declaration, as of the bankruptcy filing date of July 13, 2015 (the "Petition Date"), Debtor's assets consisted of:

- Cash in the approximate amount of $347,000;
- Accounts receivable in the approximate amount of $1,117,000;
- Inventory in the approximate amount of $148,000; and
- Furnishings, fixtures and equipment in the approximate amount of $700,000, based on book value).

Based on the foregoing, Debtor's asset base totals approximately $2,312,000. Once the Debtor is successful in recovery of the levied funds, the asset base will increase by $268,000 to approximately $2,580,000.

The Debtor's secured debt is composed of a first priority security interest in favor of Umpqua Bank ("UB") to secure an obligation in the approximate amount of $292,000 and a second priority security interest in favor of Wise Worth Consultants LTD ("WWC") in the amount of $100,000, for total secured debt in the approximate amount of $392,000. Accordingly, both UB and WWC are protected by substantial equity cushions.

In addition to the foregoing, approximately one (1) month prior to the Petition Date, the plaintiffs recorded an abstract of judgment to secure an asserted obligation of over $2.5 million. The judgment is currently subject to a pending appeal, which has been stayed in light of the bankruptcy filing. In addition, Debtor is confident that the abstract of judgment is an avoidable preference based on 11 U.S.C. § 547(b) and other lien avoidance statutes and will be a general unsecured claim.

Moreover, based on the fact that Debtor in the fresh produce business, Debtor has many P.A.C.A. creditors, who are entitled to priority treatment over other creditors of the estate based on P.A.C.A. trust provisions. *See, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996). Although Debtor has remained generally current on its P.A.C.A. obligations, such ordinary course obligations are generally in the range of $1 million at any given point in time in Debtor's business.

Finally, other than the disputed judgment claim of the plaintiffs in the amount of more than $2.5 million, which plaintiffs potentially assert is a secured claim on the basis of a recorded abstract of judgment (but which recordation constitutes an avoidable transfer), Debtor has approximately $400,000 of general unsecured debt.

**C.    Introductory Statement Regarding Debtor's Use Of Cash Collateral**

In order for Debtor to achieve its goals, maintain the going-concern value of its assets, continue to operate its business to generate profits, and pay vendors, utilities and payroll, Debtor requires the immediate use of its cash collateral. Debtor's payroll is scheduled for July 20, 2015. Debtor requests a hearing on this Motion the morning of July 20, 2015.

UB and WWB assert an interest in Debtor's cash collateral. P.A.C.A. assert an ownership interest in the cash in Debtor's possession, up to the amount that such P.A.C.A. creditors are respectively owed. The plaintiffs may also assert an interest in Debtor's cash collateral, though that interest, based on an abstract of judgment recorded less than ninety (90) days prior to the Petition Date, is avoidable and invalid. As set forth in the budget, Debtor intends to get current with the payment of all P.A.C.A. claims.

The Debtor believes that the two primary secured creditors, with asserted first priority and second priority liens against Debtor's cash collateral (and all of Debtor's personal property) (UB and WWC), will enter into stipulations with Debtor, under the following terms:

**With respect to UB:**

1.  Debtor shall be authorized to use UB's cash collateral in accordance with the budget attached as Exhibit 1 to the Yee Declaration and subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case;

2.  In order to provide adequate protection to UB, Debtor agrees to make monthly payments to Lender as provided for in the Budget;

3.  As further adequate protection, UB shall receive replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as UB was entitled to on the Petition Date; and

4.  In the event that UB seeks to review or inspect its collateral with Debtor, Debtor shall use best efforts to cooperate with UB's reasonable requests.

**With respect to WWC:**

1.  Debtor shall be authorized to use WWC's cash in accordance with the budget attached as Exhibit 1 to the Yee Declaration, subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case;

2.    In order to provide adequate protection to WWC, WWC shall receive replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as WWC was entitled to on the Petition Date; and

3.    In the event that WWC seeks to review or inspect its collateral with Debtor, Debtor shall use best efforts to cooperate with WWC's reasonable requests.

**Adequate Protection For P.A.C.A. Creditors**

As set forth above, P.A.C.A. creditors are entitled to priority treatment over other creditors of the estate based on P.A.C.A. trust provisions. *See, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996). Pursuant to this Motion and the budget, Debtor proposes to pay all claims of P.A.C.A. creditors in full and remain current with such claims. Accordingly, Debtor submits that P.A.C.A. creditors are adequately protected.

**Adequate Protection For The Plaintiffs**

As set forth above, Debtor does not believe that the plaintiffs with the Judgment have a valid lien against any of Debtor's assets. As adequate protection to the plaintiffs (bearing in mind that Debtor does not believe the plaintiffs are entitled to any adequate protection), Debtor proposes to provide to the plaintiffs replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as the plaintiff's were entitled to on the Petition Date, only to the extent that the use of Debtor's cash results in a diminution in the value of the plaintiffs' alleged liens, if any, in Debtor's cash.

Debtor requires an immediate order of this Court authorizing Debtor to use cash collateral in accordance with the budget and the terms of this Motion, through and including the week commencing on October 5, 2015, to enable Debtor to (i) pay all of the normal and ordinary operating expenses (such as payroll, utilities, insurance, and payments to vendors) as they come due in the ordinary course of businesses; (ii) purchase new inventory in order for Debtor to preserve the going concern value of its business, assets and reorganization efforts; and

(iii) avoid immediate and irreparable harm.

Debtor's business has significant going concern value and the cessation of the Debtor's business operation would place that going concern value in serious jeopardy, as well as cause the loss of the jobs of Debtor's employees.

Debtor therefore seeks authority to use cash collateral on an interim emergency basis pending a final hearing in accordance with the budget and the Stipulations, subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case.

**ADDITIONAL INFORMATION**

This Motion is based upon applicable Local Bankruptcy Rules, 11 U.S.C. §§ 105(a), 363, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, the Guidelines, this Motion, the supporting Memorandum of Points and Authorities, the Yee Declaration, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, on July 15, 2015, Debtor will serve a copy of the Motion and all supportive papers upon the Office of the United States Trustee, all secured creditors and their counsel (if known), Debtor's twenty (20) largest unsecured creditors, and on those parties who have requested special notice, via overnight mail.

**WHEREFORE**, Debtor respectfully requests that this Court hold hearings on the Motion and issue an order:

1. Granting the Motion and entering the Order;

2. Affirming the adequacy of the notice given;

3. Finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm;

4. Granting interim use of cash collateral, including authority to pay PACA claims in ordinary course of business, pursuant to the terms of this Motion;

1    5.    Scheduling deadlines relating to a final hearing on permanent use of cash

2 collateral and final approval of the cash collateral stipulations; and

3    6.    After conclusion of a final hearing authorizing permanent use of cash collateral.

4
Dated: July 15, 2015                    UNITED PROSPERITY GROUP, INC. dba  THE
5                                        PRODUCE COMPANY

6                                        By:    /s/ David B. Golubchik
7                                               DAVID B. GOLUBCHIK
                                               KRIKOR J. MESHEFEJIAN
8                                              LEVENE, NEALE, BENDER, YOO
                                                   & BRILL L.L.P.
9                                        Proposed Attorneys for Chapter 11 Debtor
                                         and Debtor in Possession
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

**A. Background Information And Events Leading To Bankruptcy Filing.**

Debtor is a processor that specializes in providing fresh cut produce (fruits & vegetables) to manufacturers (to use as ingredients for other products) and distributors (for further distribution to entities such as restaurants, hotels, hospitals and airline carriers). Debtor's innovative techniques for washing, cleaning and processing cut products result in efficient and cost-effective solutions as compared to whole raw produce that requires washing, cleaning and processing. Debtor adds value to chefs and manufactures alike due to its purchasing power, the ready to use factor of cut produce, and reduced cost of labor related to processing produce.

JR Produce was an entity that engaged in a similar business as that of Debtor, on a much smaller scale and without the progressive techniques and capabilities employed by the Company. Based on lack of sufficient financial wherewithal, JR Produce ceased operations in mid-2008. In late 2008, Debtor approached JR Produce to purchase its operating equipment to start new operations. An agreement was reached pursuant to which Debtor purchased JR Produce's operating equipment and took over its lease of business premises.

Since the end of 2008, Debtor has worked tirelessly to, first create, and thereafter, grow its business. From a startup in the end of 2008, Debtor has grown to the current level of 160-175 employees and revenues of $18-$20 million annually. Debtor has become a large part of the community, providing cut produce to numerous industries with distribution channels from San Francisco to Modesto, and from Monterey to Sacramento. Debtor has always remained current with its financial obligations to vendors and has provided the highest level of product and customer service to its customers.

When JR Produce ceased operations, a class action wage and hour lawsuit was instituted against it, which resulted in a judgment of over $1.9 million. Several years after Debtor commenced its operations, the plaintiffs that acquired a judgment against JR Produce commenced the identical action against Debtor based on a theory of successor liability, in the Superior Court of California for the County of San Francisco (the "State Court"), Case No.

CIV464121. Unfortunately for Debtor, the State Court issued a verdict in favor of the plaintiffs, thereby saddling Debtor with an unmanageable judgment of over $1.9 million retroactive to the original judgment, resulting in fees, costs and interest of hundreds of thousands of additional dollars. The judgment at issue is presently in excess of $2.5 million (the "Judgment").

Debtor sought to negotiate a resolution with the plaintiffs to avoid disruption to its operations. The plaintiffs, however, did not engage in settlement discussions and, instead, commenced levy actions against Debtor.

The plaintiffs' execution on and efforts to enforce the Judgment directly and immediately threatens Debtor's ability to continue operating as a going concern. On Monday, June 22, 2015, plaintiffs levied on UPG's bank accounts at Umpqua and Wells Fargo Bank based on the Judgment entered in the State Court on May 27, 2015. Plaintiffs' levies netted approximately $270,000 (the "Funds"), almost all of which was already obligated to Debtor's employees, producers and vendors. As a result of the levy, Debtor was unable to pay the salaries of at least 100 employees, and the payments to these employees bounced because the account funds were depleted. Approximately 20 payments to vendors totaling more than $100,000 similarly bounced. Other vendors with outstanding checks were contacted and asked to hold checks for deposit. The fees on the approximately 160 bounced checks itself totals over $5,500. The Funds are currently in the possession of the San Francisco Sheriff's Department (the "Sheriff").

Debtor was forced to commence this bankruptcy case to stay such enforcement efforts to avoid irreparable harm to the Company, its vendors, its lenders and its customer base. Through the instant case, Debtor intends to restructure its financial affairs to emerge as a stronger and healthier company free of litigation to continue to be an important part of its community. In order for Debtor to be able to achieve these goals, Debtor requires immediate access to the Funds. The Sheriff is presently holding the Funds, which it is required to turn over to Debtor pursuant to 11 U.S.C. § 543.

**B.     Primary Assets And Liabilities.**

As set forth in the budget attached as Exhibit 1 to the Yee Declaration, as of the bankruptcy filing date of July 13, 2015 (the "Petition Date"), Debtor's assets consisted of:

- Cash in the approximate amount of $347,000;
- Accounts receivable in the approximate amount of $1,117,000;
- Inventory in the approximate amount of $148,000; and
- Furnishings, fixtures and equipment in the approximate amount of $700,000, based on book value).

Based on the foregoing, Debtor's asset base totals approximately $2,312,000. Once the Debtor is successful in recovery of the levied funds, the asset base will increase by $268,000 to approximately $2,580,000.

The Debtor's secured debt is composed of a first priority security interest in favor of Umpqua Bank ("UB") to secure an obligation in the approximate amount of $292,000 and a second priority security interest in favor of Wise Worth Consultants LTD ("WWC") in the amount of $100,000, for total secured debt in the approximate amount of $392,000. Accordingly, both UB and WWC are protected by substantial equity cushions.

In addition to the foregoing, approximately one (1) month prior to the Petition Date, the plaintiffs recorded an abstract of judgment to secure an asserted obligation of over $2.5 million. The judgment is currently subject to a pending appeal, which has been stayed in light of the bankruptcy filing. In addition, Debtor is confident that the abstract of judgment is an avoidable preference based on 11 U.S.C. § 547(b) and other lien avoidance statutes and will be a general unsecured claim.

Moreover, based on the fact that Debtor in the fresh produce business, Debtor has many P.A.C.A. creditors, who are entitled to priority treatment over other creditors of the estate based on P.A.C.A. trust provisions. *See, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996). Although Debtor has remained generally current on its P.A.C.A. obligations, such ordinary course obligations are generally in the range of $1 million at any given point in time in Debtor's business.

Finally, other than the disputed judgment claim of the plaintiffs in the amount of more than $2.5 million, which plaintiffs potentially assert is a secured claim on the basis of a recorded abstract of judgment (but which recordation constitutes an avoidable transfer), Debtor has approximately $400,000 of general unsecured debt.

## C. **Debtor's Proposed Use Of Cash Collateral**

In order for Debtor to achieve its goals, maintain the going-concern value of its assets, continue to operate its business to generate profits, and pay vendors, utilities and payroll, Debtor requires the immediate use of its cash collateral. Debtor's payroll is scheduled for July 20, 2015. Debtor requests a hearing on this Motion the morning of July 20, 2015.

UB and WWB assert an interest in Debtor's cash collateral. P.A.C.A. assert an ownership interest in the cash in Debtor's possession, up to the amount that such P.A.C.A. creditors are respectively owed. The plaintiffs may also assert an interest in Debtor's cash collateral, though that interest, based on an abstract of judgment recorded less than ninety (90) days prior to the Petition Date, is avoidable and invalid. As set forth in the budget, Debtor intends to get current with the payment of all P.A.C.A. claims.

Debtor proposes to provide, and believes that the two primary secured creditors, with asserted first priority and second priority liens against Debtor's cash collateral (and all of Debtor's personal property) (UB and WWC), will accept, the following terms regarding the use of cash collateral

**With respect to UB:**

1. Debtor shall be authorized to use UB's cash collateral in accordance with the budget attached as Exhibit 1 to the Yee Declaration and subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case;

2.　In order to provide adequate protection to UB, Debtor agrees to make monthly payments to Lender as provided for in the Budget;

3.　As further adequate protection, UB shall receive replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as UB was entitled to on the Petition Date; and

4.　In the event that UB seeks to review or inspect its collateral with Debtor, Debtor shall use best efforts to cooperate with UB's reasonable requests.

**With respect to WWC:**

1.　Debtor shall be authorized to use WWC's cash in accordance with the budget attached as Exhibit 1 to the Yee Declaration, subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case;

2.　In order to provide adequate protection to WWC, WWC shall receive replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as WWC was entitled to on the Petition Date; and

3.　In the event that WWC seeks to review or inspect its collateral with Debtor, Debtor shall use best efforts to cooperate with WWC's reasonable requests.

**Adequate Protection For P.A.C.A. Creditors**

As set forth above, P.A.C.A. creditors are entitled to priority treatment over other creditors of the estate based on P.A.C.A. trust provisions. *See, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996). Pursuant to this Motion and the budget, Debtor proposes to pay all claims of P.A.C.A. creditors in full and remain current with such claims. Accordingly, Debtor submits that P.A.C.A. creditors are adequately protected.\

**Adequate Protection For The Plaintiffs**

As set forth above, Debtor does not believe that the plaintiffs with the Judgment have a valid lien against any of Debtor's assets. As adequate protection to the plaintiffs (bearing in mind that Debtor does not believe the plaintiffs are entitled to any adequate protection), Debtor proposes to provide to the plaintiffs replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as the plaintiffs were entitled to on the Petition Date, only to the extent that the use of Debtor's cash results in a diminution in the value of the plaintiffs' alleged liens, if any, in Debtor's cash.

**Debtor's Request For Entry of The Order**

Debtor requires an immediate order of this Court authorizing Debtor to use cash collateral in accordance with the budget and the Stipulations, through and including the week commencing on October 5, 2015, to enable Debtor to (i) pay all of the normal and ordinary operating expenses (such as payroll, utilities, insurance, and payments to vendors) as they come due in the ordinary course of businesses; (ii) purchase new inventory in order for Debtor to preserve the going concern value of its business, assets and reorganization efforts; and (iii) avoid immediate and irreparable harm.

Debtor's business has significant going concern value and the cessation of the Debtor's business operation would place that going concern value in serious jeopardy, as well as cause the loss of the jobs of Debtor's employees.

Debtor therefore seeks authority to use cash collateral on an interim emergency basis pending a final hearing in accordance with the budget and the Stipulations, subject to a 15% variance on a line-item and cumulative basis in the event of unexpected or unplanned events, to pay for ordinary and necessary business expenses plus the costs and fees of Debtor's professionals, upon approval of such costs and fees by the Bankruptcy Court presiding over this case.

## II.    DISCUSSION

**A.    Debtor Should Be Authorized To Use Cash Collateral To Operate, Maintain and Preserve Its Business.**

Debtor's use of property of the estates is governed by Section 363 of the Bankruptcy Code.  Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A)    each entity that has an interest in such cash collateral consents; or

> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for a reasonable period of time for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in

order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459.

Debtor is a viable operating entity whose going concern value must be maintained in order for Debtor to maximize value for all creditors and parties in interest, and for Debtor to successfully reorganize. Debtor must be able to purchase and sell inventory, much of which is perishable. Debtor can do so only with the continued use of cash collateral to pay vendors, service providers, employees, utilities, and other ordinary and necessary operating expenses. The inability of Debtor to continue to use cash collateral would cause the decimation of Debtor's significant going concern value, as well as the loss of jobs of over one hundred employees.

**B.**     **Secured Creditors Are Adequately Protected.**

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("McCombs"). Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) ("*Timbers*") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. *See also McCombs, id.*, at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs, id.*, at 266.

While protection of a secured creditor's interest in property is required, protection for the entire bundle of rights is not required. *In re Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988). If an entity's claim exceeds the value of its interest in the property, only the interest is entitled to protection; the remainder of the claim is unsecured and does not give rise to an interest in property that requires protection. *See* 11 U.S.C. § 506(a); *Wright v.*

*Union Central Life Ins. Co.*, 311 U.S. 278, 278; 61 S.Ct. 196, 199 (1940).

Debtor believes that UB and WWC are the only secured creditors that may actually have an interest in Debtor's cash collateral. Debtor believes that UB and WWC will agree to the proposed terms of the use of cash collateral set forth above. Nevertheless, Debtor believes that UB and WWC are adequately protected by substantial equity cushions. The Ninth Circuit made clear in *Mellor*, *Id.* at 1401, that an equity cushion of 20% is considered clear adequate protection of a secured creditor's interest in cash collateral. *See also In re McGowan*, 6 B.R. 241, 243 (B.Ct.E.D.Pa.1980) (holding a 10% cushion is sufficient to be adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (B.Ct.E.D.Virg.1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient adequate protection to the creditor, even though the debtors had no equity in the property). Here, there can be no question that UB and WWC are adequately protected. Even assuming that there are P.A.C.A. claims of approximately $1 million at any given time, given Debtor's asset base, and particularly if the Funds are returned to Debtor, Debtor's cash, inventory and accounts receivable are worth substantially in excess of the claims of UB and WWC.

Further, Debtor believes that P.A.C.A. creditors are adequately protected pursuant to Debtor's proposal to get and remain current with all P.A.C.A. claims.

Further, Debtor does not believe that the plaintiffs with the Judgment have a valid lien against any of Debtor's assets. As adequate protection to the plaintiffs (bearing in mind that Debtor does not believe the plaintiffs are entitled to any adequate protection), Debtor proposes to provide to the plaintiffs replacement liens in Debtor's post-petition collateral with the same, validity, extent and priority as the plaintiffs were entitled to on the Petition Date, only to the extent that the use of Debtor's cash results in a diminution in the value of the plaintiffs' alleged liens, if any, in Debtor's cash.

Finally, Debtor believes that all creditors with an interest in Debtor's cash are adequately protected by Debtor's use of cash collateral because by using its cash collateral Debtor will be able to conduct its business and generate revenue, including in order paying down UB's senior secured debt. These payments will preserve (and indeed enhance) the value of purported liens

against Debtor's assets, and the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also In re Stein*, 19 B.R. 458 (Bankr. E.D.Pa. 1982).

Furthermore, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, *supra*, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937.

Debtor cannot continue to operate its business, maximize the value of its assets, preserve the going-concern value of its business and its reorganization prospects unless Debtor is able to use its cash collateral to pay its expenses in accordance with Debtor's budget. Without such cash collateral use Debtor will be forced to shut down its operations and conduct an immediate liquidation of its assets which would prove devastating to Debtor's creditors and makes absolutely no sense. The Court should therefore authorize Debtor to use its cash collateral to pay its expenses as set forth in the budget and enter Debtor's proposed Order.

**B.** **The Procedural Requirements Regarding Approval Of This Motion Have Been Satisfied.**

Pursuant to Bankruptcy Rule 4001(b)(1)(C), Debtor is required to serve a copy of this Motion on any entity with an interest in Debtor's cash collateral, the 20 largest unsecured creditors, and any other entity that the Court directs. Debtor has complied with the foregoing by serving a copy of this Motion by email, facsimile, and/or overnight mail on all known secured creditors, the 20 largest unsecured creditors, the United States Trustee, and parties requesting

special notice in Debtor's bankruptcy case.

**C.** **Debtor Should Be Authorized To Pay PACA Obligations In The Ordinary Course of Business**

Prior to the Petition Date, certain of the Debtor's suppliers sold produce and related goods to the Debtor that may be deemed (i) "perishable agricultural commodities," as such term is defined by PACA, and (ii) other eligible goods covered by State statutes of similar effect (the "PACA Goods").

As explained by one district court:

> PACA regulates trading in perishable agricultural commodities, essentially fruits and vegetables. [PACA] was amended in 1984 upon a finding by Congress that a burden on commerce in these goods was caused by certain financial credit arrangements, whereby dealers would receive delivery of goods without having to pay for them. The 1984 Amendment provides that upon delivery of goods to the purchaser, a statutory trust automatically arises on behalf of unpaid suppliers or sellers.

*A & J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651, 653 (S.D.N.Y. 1993); see also *Heartland Produce Co. v. Kazmer, Inc.*, Case No. 96-5183, 1996 WL 680014, at *2 (N.D. Ill. Nov. 21, 1996) ("Under PACA, the proceeds from the sale of perishable agricultural goods by a 'commission merchant, dealer, or broker' are held in trust by such persons in favor of all unpaid sellers or suppliers of such commodities until full payment is tendered to the suppliers or sellers for the goods.").

The statutory constructive trust under PACA (the "PACA Trust") is imposed on a buyer's entire inventory of "perishable agricultural commodities" and all products, receivables, or proceeds related to the sale thereof (the "PACA Trust Assets"). *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 199 (3d Cir. 1998) ("[A] buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of unpaid suppliers who have met the applicable statutory requirements."). As a result of the PACA Trust, PACA "effectively vitiates a lender's security interest in trust assets

Case: 15-30897   Doc# 8   Filed: 07/15/15   Entered: 07/15/15 15:12:20   Page 20 of 31

held by produce purchasers vis-a-vis unpaid produce suppliers." *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1994) (emphasis omitted).

PACA applies to "merchants, dealers and brokers" of perishable agricultural commodities. The PACA definition of "dealers" includes persons purchasing perishable agricultural commodities solely for retail sale, as long as the invoice cost of such purchases in any calendar year exceeds $230,000. *See In re Magic Restaurants, Inc.*, 197 B.R. 455, 457 (Bankr. D. Del. 1996). The Debtor may be considered a "dealer" of perishable agricultural commodities, and thus may be subject to the imposition of a PACA Trust for unpaid amounts.

As a result, as a matter of law, holders of valid PACA Trust Claims are entitled to payment from the applicable statutory trust ahead of the Debtor's other creditors. *See, e.g., In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996) ("A PACA trust beneficiary is . . . entitled to claim trust property ahead of even creditors holding security interests in the property."). Because assets of PACA trusts do not constitute property of the Debtor's estate, the requested relief does not prejudice the Debtor's creditors. *See, e.g., In re United Fruit & Produce Co.*, 242 B.R. 295, 298 (Bankr. W.D. Pa. 1999) ("PACA trust assets are not property of the estate.").

Given the statutory trust created by PACA and state statutes of similar effect, the Debtor anticipates that multiple suppliers will file notices (or may have already filed notices) and assert demands for payment under PACA and similar state statutes (collectively, "PACA Notices"). The Debtor submits that full payment of all PACA Trust Claims, to the extent such claims are valid (in whole or in part), should be authorized by this Court. The Debtor values its supplier relationships, and it is important to the Debtor's reorganization that the flow of fresh produce and related goods continue unimpeded.

Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

21

§ 105(a). Accordingly, the Debtor submits that entry of an order granting the relief sought herein is critical to the Debtor's continued business operations and overall ability to maximize the value of its estate, and therefore is justified under 11 U.S.C. § 105(a).

Further, courts in other districts have granted similar relief regarding the claims of potential PACA Trust Claimants in other chapter 11 cases. *See, e.g., In re Bashas' Inc.*, Case No. 09-16050 (Bankr. D. Ariz. July 24, 2009); *In re Premier Int'l Holdings, Inc.*, Case No. 09-12019 (Bankr. D. Del. July 14, 2009); *In re BI-LO, LLC*, Case No. 09-02140 (Bankr. D. S.C. April 9, 2009); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (Bankr. D. Del. May 30, 2008); *In re Buffet Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008); *In re Midland Food Services, LLC*, Case No. 08-11802 (Bankr. D. Del. Aug. 6, 2008); *In re Nutritional Sourcing Corp.*, Case No, 07-11038 (PJW) (Bankr. D. Del. Aug. 23, 2007); *In re Winn-Dixie Stores, Inc.*, Case No. 05-11063 (RDD) (Bankr. S.D.N.Y. Mar. 22, 2005).

### III. <u>CONCLUSION</u>

**WHEREFORE**, Debtor respectfully requests that this Court hold hearings on the Motion and issue an order:

1. Granting the Motion and entering the Order;

2. Affirming the adequacy of the notice given;

3. Finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm;

4. Granting interim use of cash collateral, including authority to honor PACA obligations in the ordinary course of business, pursuant to the terms of the Motion;

5. Scheduling deadlines relating to a final hearing on permanent use of cash collateral and final approval of the cash collateral stipulations; and

6. After conclusion of a final hearing authorizing permanent use of cash collateral.

1    Dated: July 15, 2015                         UNITED PROSPERITY GROUP, INC. dba  THE
                                                  PRODUCE COMPANY
2

3                                                 By:  ____/s/ David B. Golubchik_____
                                                       DAVID B. GOLUBCHIK
4                                                      KRIKOR J. MESHEFEJIAN
                                                       LEVENE, NEALE, BENDER, YOO
5                                                        & BRILL L.L.P.
                                                       Proposed Attorneys for Chapter 11 Debtor
6                                                      and Debtor in Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

DAVID B. GOLUBCHIK (SBN 185520)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | ) Case No. 15-30897 |
| | ) |
| UNITED PROSPERITY GROUP, INC. dba | ) Chapter 11 Case |
| THE PRODUCE COMPANY, | ) |
| | ) **ORDER GRANTING, ON AN INTERIM** |
| Debtor and Debtor in Possession. | ) **BASIS, DEBTOR'S EMERGENCY** |
| | ) **MOTION FOR ORDER (1) GRANTING** |
| | ) **INTERIM USE OF CASH** |
| | ) **COLLATERAL; (2) SCHEDULING** |
| | ) **DEADLINES RELATING TO A FINAL** |
| | ) **HEARING ON PERMANENT USE OF** |
| | ) **CASH COLLATERAL AND FINAL** |
| | ) **APPROVAL OF CASH COLLATERAL** |
| | ) **STIPULATIONS; AND (3) AFTER** |
| | ) **CONCLUSION OF A FINAL HEARING** |
| | ) **AUTHORIZING PERMANENT USE OF** |
| | ) **CASH COLLATERAL** |
| | ) |
| | ) Date: |
| | ) Time: |
| | ) Place: U.S Bankruptcy Court |
| | )        235 Pine St., 23rd Floor |
| | )        Sa Francisco, CA 94101 |
| | ) Judge: The Hon. Hannah L. Blumenstiel |
| | ) |
| | ) |
| | ) |

On July __, 2015, at __:__ _.m., the Honorable Hannah L. Blumenstiel, United States Bankruptcy Judge for the Northern District of California, San Francisco (the "Court") held an emergency hearing (the "Hearing"), on the *Emergency Motion For Order (1) Granting Interim Use Of Cash Collateral; (2) Scheduling Deadlines Relating To A Final Hearing On Permanent Use Of Cash Collateral And Final Approval Of Cash Collateral Stipulations; And (3) After Conclusion Of A Final Hearing Authorizing Permanent Use Of Cash Collateral* [Docket No. _____] filed by United Prosperity Group, Inc. dba The Produce Company, debtor and debtor in possession in the above-referenced chapter 11 case ("Debtor"). Appearances were made as set forth on the record of the Court.

The Court, having considered the Motion, the declarations of Soo Ming Yee and David B. Golubchik in support of the Motion, the operating budget (the "Budget") attached as **Exhibit "1"** to the declaration of Soo Ming Yee, all documents filed in support of the Motion, the statements and arguments made on the record at the Hearing, the entire record in this case, the entire docket in this case, having determined that approval of the Motion on an interim basis is necessary to avoid severe and irreparable harm to the Debtor and its bankruptcy estate, and for good cause appearing, therefor,

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1) The Notice of the Motion was good, proper, and appropriate under the Local Bankruptcy Rules, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Code, as may have been modified by the Court under the circumstances;

(2) The Motion is GRANTED on an interim basis pending a final hearing;

(3) The Debtor is authorized to use cash collateral for the interim period to pay all of the expenses set forth in the Budget, with authority to deviate from each line item and cumulative totals contained in the Budget by not more than 15%;

(4) In consideration for the use of its cash collateral, all creditors that assert an interest in cash collateral shall be afforded replacement liens on the post petition revenues, issues and profits of the Debtor, with such replacement liens to have the same extent, validity, scope, and priority as the creditors were entitled to immediately prior to the Petition Date;

(5)     The Debtor is authorized to honor its PACA obligations in the ordinary course of business;

(6)     The final hearing (the "<u>Final Hearing</u>") on the Motion shall be scheduled for August __, 2015, at __:__ _.m.; and

(7)     Oppositions to the approval of the Motion at the Final Hearing shall be filed and served not later than _____, 2015, with the Debtor's response to be filed and served not later than _____, 2015.

**\*End of Order\***

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S EMERGENCY MOTION FOR ORDER (1) GRANTING INTERIM USE OF CASH COLLATERAL; (2) SCHEDULING DEADLINES RELATING TO A FINAL HEARING ON PERMANENT USE OF CASH COLLATERAL AND FINAL APPROVAL OF CASH COLLATERAL STIPULATIONS; AND (3) AFTER CONCLUSION OF A FINAL HEARING AUTHORIZING PERMANENT USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 15, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M. Arnold     TMA@lnbrb.com
- Julie M. Glosson     julie.m.glosson@usdoj.gov
- David B. Golubchik     dbg@lnbrb.com
- Office of the U.S. Trustee / SF     USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com

**2.  SERVED BY UNITED STATES MAIL**: On **July 15, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 15, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2015 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          **F 9013-3.1.PROOF.SERVICE**

Yang Wei Xi Produce
815 Larkspur Dr.
Millbrae, CA 94030-0000

Wise Worth Consultants, LTD
3A King George V Avenue
Floreal, Mauritius,

What a Tomato
2055 Jerrold Avenue
San Francisco, CA 94124-0000

Veritable Vegetable
1100 Cesar Chavez Street
San Francisco, CA 94124-1214

Umpqua Financial Pacific Leasing
P.O. Box 749642
Los Angeles, CA 90074-9642

Umpqua Bank
PO Box 2109
Portland, OR 97208-2109

Toyota Financial Services
PO Box 60116
City of Industry, CA 91716-0116

Thermo Fisher Financial Services, Inc.
81 Wyman St.
Waltham, MA 02454-0000

Stanley Produce
1975 Jerrold Avenue
San Francisco, CA 94124-0000

Shasta Produce
PO Box 2328
South San Francisco, CA 94083-2328

Sequoia Sales Produce
P.O. Box 728
Millbrae, CA 94030-0000

S&S Marketing and Sales Inc.
P.O. Box 3890
Salinas, CA 93912-0000

Rigo's Produce
131 Terminal Court #48
So. San Francisco, CA 94080-0000

Redwood Produce, Inc.
P.O. Box 3145
Redwood City, CA 94064-0000

Ratto Bros., Inc.
P.O. Box# 146
Salida, CA 95368-0146

Pro*Act LLC
24560 Silver Cloud Court
Monterey, CA 93940-6536

Petra Produce Inc.
P.O. Box 2265
So. San Francisco, CA 94083-0000

Pablo's Produce, Inc.
P.O. Box 829
Oxnard, CA 93032-0000

NMHG Financial Services-forklift
P.O. Box 643749
Pittsburgh, PA 15264-3749

NHMG Financial Services-PalletJack
P.O. Box 643749
Pittsburgh, PA 15264-3749

Millard Sales
255 Wildwood Wy.
Salinas, CA 93908-0000

Landsberg Co.
PO Box 101144
Pasadena, CA 91189-1144

J.C. Cheyne & Co
155 Terminal Court-Unit 38
So. San Francisco, CA 94080-0000

J. Gomez Produce Inc.
131 Terminal Ct., Stall 35
South San Francisco, CA 94080-0000

Isuzu Finance of America, Inc.
7865 Solution Center
Chicago, IL 60677-7008

InterFresh, Inc.
2019 W. Orangewood Avenue
Orange, CA 92868-0000

Guan's Mushroom Co.
P.O. Box 2861
Fremont, CA 94536-0000

GreenLeaf
453 Valley Drive
Brisbane, CA 94005-1209

Greenfield Fresh, Inc.
2910 Camino Diablo, Ste. 100
Walnut Creek, CA 94597-0000

Grant J. Hunt Company
P.O. Box 23545
Oakland, CA 94623-0545

General Produce Co., Ltd.
P.O. Box 308
Sacramento, CA 95812-0000

G.W. Palmer & Co., Inc.
231 Pomeroy St Suite F
Pismo Beach, CA 93449-0000

Franzella Produce Inc.
Golden Gate Produce Terminal #55-56
P.O. Box 2285
So. San Francisco, CA 94080-0000

Franzella Distributing
Golden Gate Produce Terminal
P.O. Box 2007
So. San Francisco, CA 94083-0000

Dan Avila & Sons
2718 Roberts Road
Ceres, CA 95307-0000

Coosemans San Francisco, Inc.
P.O. Box 11219
Tampa, FL 33680-0000

Coast Tropical III
229 Littlefield Avenue, Unit 1
Edgewater Distribution Center
S. San Francisco, CA 94080-0000

Classic Salads
525 Old Natividad
Salinas, CA 93908-0000

California Endive Farms
P.O. Box 638
Rio Vista, CA 94571-0000

Cali Fresh Produce -SF
125 Terminal Court#40C
So. San Francisco, CA 94080-0000

C.B. Edulis
131 Terminal Court unit No. 43, 45
So. San Francisco, CA 94080-0000

Brother's Produce
125 Terminal Court - Stall 63
Golden Gate Produce Terminal
So. San Francisco, CA 94080-0000

Bonita Packing Company, Inc.
PO Box 748010
Los Angeles, CA 90074-8010

Berti Produce S. F. Co.
1960 Jerrold Ave.
San Francisco, CA 94124-0000

Bay Area Herbs & Specialties (BAHS)
Golden Gate Produce Terminal,
Unit 40A
So. San Francisco, CA 94083-0000

Banner Fruit Co.
Golden Gate Produce Terminal
P.O. Box 2971
South San Francisco, CA 94083-2971

B&P Packing Co., Inc.
300 Nestles RD.
PO Box 847
Soledad, CA 93960-0000

Jauna Chavez, Luis Cabrera aka Luis Rea,
Martin Calamateo Cruz, Jose Hernandez, &
Certified Class c/o Liberation Law Group
2760 Mission Street
San Francisco, CA 94110-0000

Kahn Enterprises, LLC.
1200 Gough Street, Suite 900
San Francisco, CA 94109

International Paper
P.O. box 31001-0780
Pasadena, CA 91110-0780

Landsberg Co.
PO Box 101144
Pasadena, CA 91189-1144

Law Offices of Randolf Krbechek
9477 N. Fort Washington
Road, Suite 104
Fresno, CA 93730

Oakland Package & Supply
3200 Regatta Blvd., Suite F
Richmond, CA 94804

Z4-Casewell, Bell &Hillison
5200 North Palm Avenue
Suite 211
Fresno, CA 93704

Lone Tree Trucking, Inc.
P.O. Box 321
Byron, CA 94514

Global Supply Company
P.O.Box 3398
Hayward, CA 94545

Harry's Refrigeration
131 Jasper PL
San Francisco, CA 94133

Pro-Western Plastics Ltd.
30 RIEL DRIVE
P.O. BOX 261
ST. ALBERT, AB T8N 1N3

PG & E-Shared Electric
Box 997300
Sacramento, CA 95899-7300

ChemStation
1448 N Shaw Road
Stockton, CA 95215

SSF Scavenger Company, Inc.
PO Box 348
South San Francisco, CA 94083

Drew-Massa Transportation
P.O. Box 6982
Salinas, CA 93912

California Water Service Company
341 North Delaware
San Mateo, CA 94401

XTRA Companies, Inc.
PO Box 99262
Chicago, IL 60693-9262

Select Staffing
PO Box 512007
Los Angeles, CA 90051-0007

Allied Insurance
PO Box 514540
Los Angeles, CA 90051-4540

Flyers Energy, LLC
Dept 34516
PO Box 39000
San Francisco, CA 94139

*Counsel for Wise Worth*
Gary Gitlin, Esq.
15760 Ventura Blvd., Ste. 1200
Encino, California  91436

*Counsel For Class Action Plaintiffs*
Arlo Garcia Uriarte
Liberation Law Group, P.C.
2760 Mission Street
San Francisco, CA 94110

San Francisco Sheriff's Dept.
Attn: Levy's - Sherry
San Francisco City Hall
1 Dr Carlton B Goodlett Pl # 456
San Francisco, CA 94102

Julie M. Glosson
Office of the United States Trustee
235 Pine St. #700
San Francisco, CA 94104

Urschel Laboratories Inc.
P.O. Box 96319
Chicago IL 60693